IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

| | | |
|---|---|---|
| LISA CRAIN; CATHEE CRAIN;<br>MARILLYN CRAIN BRODY; and<br>KRISTAN SNELL | | PLAINTIFFS |
| V. | CASE NO. 2:20-CV-2038 | |
| SHIRLEY CRAIN and RAY FULMER,<br>as Representative of the Estate<br>of H.C. "Dude" Crain, Jr., Deceased | | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

Separate Defendant Shirley Crain has filed a Motion to Alter Judgment (Docs. 231 & 242) and a Motion to Stay Judgment Pending Post-Judgment Motion and Appeal (Doc. 218). For the reasons discussed below, the Motion to Alter Judgment is **DENIED**, and the Motion to Stay Judgment Pending Post-Judgment Motion and Appeal is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

The Court incorporates by reference the factual and procedural history of the case as set forth in its order on summary judgment (Doc. 147) and its Findings of Fact, Conclusions of Law, and Rulings (Doc. 203) issued following the bench trial of this matter. The following facts are included only to give context to the Court's rulings below; they are not meant to be detailed or exhaustive.

Plaintiffs are four sisters who sued their stepmother, separate Defendant Shirley Crain, and the probate estate of their father, H.C. "Dude" Crain, Jr., to enforce a contract Dude made with Plaintiffs' mother, Marillyn. Dude and Marillyn divorced in 1989, and as part of their property settlement agreement ("PSA"), they promised to

1

make wills that would leave at least half the property they owned and controlled at the time of their deaths to their children, the Plaintiffs. It was undisputed that the PSA was a valid and enforceable contract to make a will. It was also undisputed that Dude's operative will, as amended, was the one he made in 2012. The threshold dispute was a legal one: whether the terms of Dude's 2012 will satisfied his contractual obligations under the PSA. On cross motions for summary judgment—where the parties agreed that all pertinent facts were undisputed—the Court ruled in Plaintiffs' favor, finding that:

> Because Dude failed to engage in appropriate estate planning that would have left at least half of his estate to the Plaintiffs, he breached the promise he made to Marillyn as memorialized in the PSA. The breach here is obvious; it is not a close call. The remedy is specific performance of the PSA's will provision. *See Janes v. Rogers*, 271 S.W.2d 930, 934 (Ark. 1954) (finding that the appropriate remedy for breach of contract to make a will is specific performance).

(Doc. 147, p. 12).

However, by the time Plaintiffs brought suit, Dude had been dead approximately three years. In the interim, Shirley had taken sole possession and control of all assets that Dude had owned and controlled at the time of his death. Thus, as the Court explained in its summary judgment opinion, the only way to effectuate the contract's terms and achieve specific performance was to impress a constructive trust over the assets subject to Dude's contractual obligation:

> "A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that [she] would be unjustly enriched if [she] were permitted to retain it." *Cox v. Miller*, 210 S.W.3d 842, 848 (Ark. 2005). "The duty to convey the property may arise because it was acquired through . . . wrongful disposition of another's property." *Id.* at 849. A constructive trust has the effect of converting the person with the duty to convey "'into a trustee for the parties who in equity are entitled to the beneficial enjoyment.'" *Davidson v. Sanders*, 357 S.W.2d 510, 517 (Ark. 1962) (quoting Black's Law Dictionary, 4th Edition). Therefore, the Court will impress a

2

>constructive trust on half the property Dude owned and controlled up to the moment of his death, (as well as any post-death interest, earnings, or proceeds), with the value of such to be determined at trial.

*Id.* at pp. 16–17.

During a three-day bench trial in July of 2021, the Court heard evidence regarding the nature and character of the assets subject to the constructive trust. The trial was also Shirley's opportunity to put on proof in support of her affirmative claim to a beneficial and/or equitable interest in the disputed assets. Following post-trial briefing, the Court entered its Judgment (Doc. 204) on January 18, 2022, impressing a constructive trust on the assets set forth in the Court's Findings of Fact and Conclusions of Law (Doc. 203).

There were two broad categories of assets at issue: those Dude owned *individually* and those Dude held *jointly* with Shirley. In impressing the constructive trust, the Court first identified the property that Dude owned and controlled individually at the time of his death. *See id.* at pp. 10–15, 50–51. Then, citing *Marshall v. Marshall*, 547 U.S. 293, 310 (2006), the Court explained why it had jurisdiction to adjudicate Plaintiffs' rights and interests in these assets, while at the same time recognizing that the Sebastian County Probate Court had exclusive authority to possess, administer, and transfer these assets through the probate process. *See* Doc. 203, pp. 37, 50–51. The Court's Judgment ordered Shirley to deliver these assets to Ray Fulmer, the Administrator of Dude's estate, who is a named defendant in this action, too.

Next, the Court identified and impressed a constructive trust over property Dude owned jointly with Shirley, as husband and wife, at the time of his death. *See id.* at pp. 17–32, 52–59. These assets were not subject to probate. Shirley, as trustee of the

3

constructive trust, was ordered to deliver Plaintiffs' interest in these assets (or their dollar-value equivalent) directly to Plaintiffs.

On February 3, 2022, Shirley filed a Motion to Stay Pending Post-Judgment Motion and Appeal (Doc. 218). On February 11, Plaintiffs filed a Response (Doc. 221) opposing the stay as to all assets subject to the constructive trust. On February 15, Administrator Fulmer, on behalf of Dude's probate estate, filed a Response (Doc. 230) opposing the stay with respect to Dude's individually owned assets. The parties then filed replies and sur-replies (Docs. 223, 226, 227 & 238), and the Motion to Stay is now ripe for resolution.

On February 15, 2022, Shirley timely filed a Motion to Alter Judgment (Doc. 231). The incorporated brief in support was more than twice the length permitted by the Court's scheduling order. The Court directed Shirley's counsel to cut 30 pages and refile it.[1] Shirley refiled a shorter version of the brief on March 1. *See* Doc. 242.

---

[1] Two days after Shirley filed her Motion to Alter Judgment, Plaintiffs moved to strike the overly long supporting brief. *See* Doc. 232. Plaintiffs correctly pointed to the Court's scheduling order (Doc. 73), which required *briefs* in support of motions to be no more than 25 pages. Shirley's filing was a 55-page combined motion with incorporated brief in support. The motion portion of the document was a single paragraph that consumed less than one page. *See* Doc. 231.

The Court declined Plaintiffs' invitation to strike the entire document. Instead, the Court ordered Shirley's counsel to cut 30 pages of briefing and refile it. *See* Doc. 241. Shirley filed the amended version on March 1. *See* Doc. 242. The original brief and the shorter brief contain identical substantive arguments; the difference is that the shorter brief is more concise and helpful. On March 7, Plaintiffs filed a response (Doc. 244) to Shirley's pared-down brief. That same day, Plaintiffs separately objected to the Court's remedy, *see* Doc. 243, arguing that the shorter version of Shirley's motion was untimely as a matter of law under Rule 52(b) or 59(e) because it was filed more than 28 days after the Judgment was entered.

Plaintiffs' frivolous objection is not well received. The Court did not strike Shirley's timely filed *motion*. Rather, the Court struck Shirley's "*brief* in support" and granted her leave

Plaintiffs filed a Response in Opposition (Doc. 244) on March 7, making the Motion ripe. Below, the Court will first take up the Motion to Alter Judgment and then address the Motion to Stay.

## II.  DISCUSSION

### A.  Motion to Alter Judgment

Shirley's Motion to Alter Judgment is based on Rules 52 and 59.  Rule 52(b) states that on a party's motion, "the court may amend its findings—or make additional findings—and may amend the judgment accordingly."  Such a motion "may accompany a motion for a new trial under Rule 59."  Fed. R. Civ. P. 52(b).  Rule 59(e) contemplates the filing of a "motion to alter or amend a judgment."

A Rule 52 motion "cannot be used to raise arguments that could have been raised prior to the issuance of judgment." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996).  Similarly, "Rule 59(e) motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to the entry of judgment." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006) (internal citations and quotations omitted).

Shirley's Motion to Alter Judgment raises legal arguments that Shirley's trial counsel either: (1) presented to the Court before judgment, but were rejected (for

---

to "*re*file" a 30-page-shorter "brief." (Doc. 241, p. 2) (emphasis added).  Moreover, the Court's order required the refiled brief to contain the same content, just less of it. *See id.* Plaintiffs' Objection (Doc. 243) is therefore **OVERRULED**.

5

reasons stated in the Court's written orders) or (2) could have been presented before judgment by Shirley's trial counsel—but were not.[2]

### *1. Standing*

Shirley's first argument is that Plaintiffs lacked standing to bring this lawsuit against her because she was not a party to Dude and Marillyn's contract and did not cause Plaintiffs any injury. This argument is raised for the very first time on motion for *post-judgment* relief, which the Court finds odd and disingenuous. Nevertheless, the Court must consider issues going to its subject matter jurisdiction regardless of their timeliness.

"In a diversity case, a court will not address a plaintiff's claims unless the plaintiff meets the 'case or controversy' requirements of article III of the Constitution and also has standing to sue under the relevant state law." *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1126 (8th Cir. 1998) (quoting *Metropolitan Express Servs., Inc. v. City of Kansas City,* 23 F.3d 1367, 1369–70 (8th Cir. 1994)). To establish Article III standing to sue Shirley, Plaintiffs must demonstrate:

(a) the invasion of a legally protected interest which is both concrete, and actual or imminent;

(b) a causal connection between the injury and the conduct complained of; and

(c) the likelihood that the injury will be redressed by a favorable judicial decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

---

[2] Shirley added new lawyers to her legal team after the Court filed its Findings of Fact and Conclusions of Law. The new lawyers are the ones who filed the Motion to Alter Judgment. For the most part, Shirley's new lawyers have merely reframed the previously rejected legal arguments that were made by her trial counsel.

For the purposes of this Motion, Shirley does not dispute that Plaintiffs suffered an injury in fact. Instead, she argues that Plaintiffs cannot fairly trace their injury to anything Shirley did or did not do, so they have no standing to sue her. The Court disagrees. Shirley was named a defendant in this lawsuit based on allegations that she held and claimed legal title to assets that Plaintiffs were seeking to impress with a constructive trust. *See* Plaintiffs' Second Amended Complaint, Doc. 38. In other words, Plaintiffs were seeking to establish and then foreclose upon an alleged equitable interest to real and personal property in Shirley's possession and control.

Plaintiffs' contended they are third party beneficiaries and had "a legally protected interest" in assets that were subject to the PSA's will provision, and that Shirley invaded that interest and deprived them of the use and enjoyment of the assets—albeit perhaps unknowingly[3]—when she took possession of them upon Dude's death. Because Dude died in 2017 and could no longer perform under the contract, Plaintiffs alleged that a constructive trust was necessary to avoid Shirley's unjust enrichment at their expense and to prevent further injury caused by Shirley's continued, unlawful possession of the assets. *See* Doc. 38, pp. 9–10.

The equitable relief sought by Plaintiffs against the property and proceeds in Shirley's possession is well grounded in Arkansas law. The Court found that Dude (not Shirley) had breached the PSA, but even so, under Arkansas law, Shirley was in wrongful possession of Dude's property. The Court further found that Shirley owed

---

[3] The Court accepted "at face value" Shirley's assertion at trial that she was "unaware of Dude's contractual obligations under the PSA until Plaintiffs filed this lawsuit against her and Dude's estate on March 27, 2020." (Doc. 203, p. 34).

Plaintiffs "[t]he duty to convey the property" as "trustee for the [Plaintiffs] who in equity are entitled to the beneficial enjoyment." (Doc. 147, p. 17) (citations omitted).

The Court therefore now concludes that Plaintiffs had standing under federal law to sue Shirley. Plaintiffs suffered a concrete, actionable injury—the deprivation of their property rights and loss of the use and enjoyment of their property—which was causally linked to Shirley's action and/or inaction and was directly traceable to Shirley. Plaintiffs filed suit against Shirley to redress the injury and prevent Shirley's unjust enrichment.

Plaintiffs also had standing to sue Shirley under state law. "Arkansas law on 'standing' states that a person or party who has a pecuniary interest in the outcome of the action has standing to assert a claim on his or its behalf." *First United Bank v. Phase II*, 347 Ark. 879, 893 (2002). Plaintiffs had a pecuniary interest in the outcome of this action, and Shirley was a necessary party to this suit.[4] "[T]he sweep of unjust enrichment is broad enough so that a constructive trust may also be imposed against an innocent party, provided that the innocent party would be unjustly enriched vis-a-vis the plaintiff." Howard W. Brill & Christian H. Brill, 1 *Ark. Law of Damages* § 20.5 (6th ed.).

### 2. *Subject Matter Jurisdiction*

Next, Shirley revisits a previously rejected argument about subject matter jurisdiction. She contends the state probate court is the only court that may adjudicate this breach of contract dispute. The Court disagrees and has already explained its reasoning. *See* Doc. 167, pp. 11–12; Doc. 203, pp. 37 & 50 n.12. In the alternative, Shirley argues that the only tribunal with subject matter jurisdiction over the dispute is

---

[4] Shirley never challenged the Court's personal jurisdiction over her as a necessary party to this lawsuit, and it is too late to raise that challenge now. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) (finding personal jurisdiction is waived by either express or implied consent).

the state domestic relations court that ratified Plaintiffs' parents' divorce decree and PSA. The will provision of the PSA does contemplate the domestic relations court retaining jurisdiction of the case "for the purpose of adjudicating and awarding *to the parties* their interest and rights to and in the property and property rights." (Doc. 38-2, pp. 2–3) (emphasis added). But, obviously, the Plaintiffs were not parties to the contract. The parties were Plaintiffs' parents, who were dead by the time Plaintiffs filed suit for breach of contract.

Regardless, at no point did the domestic relations court have exclusive jurisdiction over this dispute. The Supreme Court has held that the domestic relations exception to federal jurisdiction is not intended "to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or an alimony decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 701 (1992). The case at bar involves a breach of contract claim and has nothing to do with divorce, alimony, child support, or child custody. It follows that this Court properly exerted subject matter jurisdiction over the suit pursuant to 28 U.S.C. §1332(a), as the parties are fully diverse and the amount in controversy exceeds the jurisdictional minimum for federal court.

### 3. *Appropriateness of Remedy*

Third, Shirley repeats an argument her trial counsel made—more than once—prior to judgment: that a constructive trust is an inappropriate remedy for Dude's breach of contract. The Court refers Shirley's counsel to its prior reasoning on the subject. *See* Doc. 147, pp. 16–17; Doc. 167, pp. 4–6. Shirley also repeats her claim that she is under no duty to convey any property to Dude's estate Administrator or to Plaintiffs

9

because she is "innocent" of any malfeasance. The Court addressed this argument in its Findings of Fact and Conclusions of Law. (Doc. 203, pp. 33–37 & 45–49).

### *4. Summary Judgment Rulings on Liability*

Fourth, Shirley seeks to relitigate the issues raised on summary judgment concerning Dude's liability for breach of contract. The Court remains unpersuaded. *See* Doc. 147.

### *5. Fairness of the Court's Findings*

Fifth, Shirley protests she "is left with a larger liability in restitution than that which the Restatement deems appropriate." (Doc. 242, p. 14). The Court disagrees and refers Shirley's counsel to the Findings of Fact and Conclusions of Law for the Court's explanation. *See* Doc. 203, pp. 45–49.

### *6. Arguments in Favor of Setoff*

Sixth, Shirley disagrees with how the Court resolved the contentious issue of the 2012 Christmas gifts. At trial, Shirley presented *no evidence* that Dude intended the 2012 Christmas gifts to satisfy his contractual obligations to Plaintiffs. The Court's Findings of Fact and Conclusions of Law explain that Plaintiffs understood these gifts were advances on their inheritance; however, there was no proof—even indirect or circumstantial proof—linking Dude's contractual obligation under the PSA to the 2012 Christmas gifts. Plaintiffs are correct that their father could have left them *more* than half of what he owned and controlled at the time of his death (more than the contract required) if he so chose, and the Court is not prepared to simply assume, absent any evidence, that his true intention was to credit the Christmas gifts against his contractual obligation. *See* Doc. 203, p. 49.

Finally, Shirley presents new evidence, not raised at trial, that she is entitled to further credits and setoffs. The Court declines to consider this evidence as it is not actually "new" but was well known to Shirley prior to trial and could have been raised then, or in post-trial briefing prior to judgment.[5] As for Shirley's complaints concerning the Court's methodology for tracing, apportioning, and valuing the disputed assets, the Court declines to reconsider its ruling or else finds that Shirley waived these objections prior to the entry of the Judgment.[6]

_____

The Court issued findings of fact and conclusions of law that took into account the credibility of the witnesses who testified at trial and considered all facts in the trial record, the legal issues presented by the parties, and the voluminous post-trial briefing. The Court even offered the parties an opportunity to identify clerical and mathematical errors in its findings before entering the Judgment. *See* Doc. 203, p. 1 n.1. At this point, the Court's work is finished, and Shirley's next step is to appeal. For all these reasons, the Motion to Alter Judgment under Rules 52 and 59 is **DENIED**.

---

[5] Shirley argues for the first time that the Court should have assumed a different valuation for certain assets—one that took into account her estimated payment of brokerage fees, management fees, personal property taxes, and capital gains taxes. Shirley did not present any specific testimony at trial about how much she paid in fees and taxes to offset the value of any personal or real property, nor did she focus the Court in post-trial briefing on how to calculate these figures. What Shirley *did* do was file a joint stipulation, along with Plaintiffs, as to the value of most of the assets, including all the real property, and the Court relied on these figures. *See* Doc. 165. It is not the Court's burden to comb through notebooks full of tax returns, stock spreadsheets, and bank statements to figure out if Shirley was entitled to any offset or credit she failed to raise. "Judges are not like pigs, hunting for truffles buried in [the record]." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)

[6] The Court explained in its Findings of Fact and Conclusions of Law, (Doc. 203, p. 8), that "[b]efore the bench trial, the parties stipulated to the identity and value of nearly all the assets Dude owned and controlled at his death, either individually or jointly with Shirley." *See also* Doc. 165, Parties' Joint Stipulation.

11

## B. Motion to Stay Judgment Pending Appeal

Shirley has separately moved for a stay of judgment pending the outcome of her forthcoming appeal (Doc. 218). It is not entirely clear whether a stay is sought with respect to Dude's *separate* assets (that Shirley was ordered to deliver to the Administrator of Dude's probate estate), or whether the stay is focused on the assets that Dude held *jointly* with Shirley at the time of his death.[7] Regardless, Plaintiffs and Separate Defendant Ray Fulmer object. The Court will therefore address both categories of assets below, after first addressing the legal considerations.

In ruling on a motion to stay, the Court must consider the following four factors: (1) the likelihood of the movant's success on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay will substantially injure the non-moving party; and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998).

The Eighth Circuit directs the Court to "consider the relative strength" of these factors. *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). While the "most important factor is the [movant's] likelihood of success on the merits," the Court is tasked with balancing *all* the factors, which means that "[c]lear evidence of irreparable injury should result in a less stringent requirement of certainty of victory," and vice versa. *Id*. (quotation marks and citation omitted). "The party requesting a stay bears the

---

[7] Shirley's Motion to Stay discusses the irreparable harm she will suffer if presently forced to deliver to Plaintiffs the constructive trust portion of Dude's jointly held assets, *i.e.*, those assets listed in Tables 2–5 of the Court's Findings of Fact and Conclusions of Law, Doc. 203, pp. 52–59. Shirley does not, however, substantively explain how or why she would be harmed by the delivery of Dude's separate assets to the Administrator of his probate estate. She merely quantifies that portion of the proposed supersedeas bond that would be pledged to secure Dude's separate property, *i.e.*, those assets listed in Table 1 of the Court's Opinion, *id.* at pp. 50–51.

burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

### 1. Dude's Separate Assets

As to the first category of assets, the Judgment ordered Shirley "to deliver the assets in Table 1 of the Order to the Administrator of the Estate of H.C. 'Dude' Crain, Jr." (Doc. 204). Shirley has not offered any explanation as to how or why she would be harmed by this aspect of the Judgment. Nor is the Court aware of any potential harm. As Shirley has correctly recognized, Dude's separate property must pass through probate. This is true regardless of whether Dude breached the PSA. In other words, if Shirley fully prevails on appeal, Dude's separate property must still pass through probate.

In her summary judgment motion, Shirley took the position that, as a matter of law, Dude's 2012 will did not violate the PSA. And since Shirley did not probate the will nor establish the trusts as directed by the will, even she agreed that Dude's separate property must be admitted to probate:

> Property that Dude owned at his death comprises his estate. Property that he had given away, put into trust, or owned jointly with his spouse at the time of his death is not in his estate. . . . It appears that on his death Dude separately owned stock in two companies: 100% of Premier Foam, Inc., and 100% of Dude, Inc. This property should be probated by the Executor, Ray Fulmer, in Sebastian County and conveyed into the Marital Deduction Trust per the terms of the 2012 Will.

(Doc. 90, pp. 26–27).

Shirley is unlikely to prevail on appeal because, as a threshold matter, Dude's 2012 will clearly did not comply with his obligations under the PSA. But even if Shirley *does* prevail, Dude's separate assets will necessarily pass through probate anyway—

just as Shirley contemplated at summary judgment. Thus, Shirley can demonstrate no harm arising from the Court's order that she presently deliver those assets to Mr. Fulmer. The other stay factors follow suit for the same reasons and are therefore resolved against Shirley.

To be very clear, the Court's task here was limited to the adjudication of the breach of contract claim against Dude's estate and the imposition of a corresponding judgment consistent with the resulting remedy—in this instance, specific performance and a constructive trust. However, as this Court has acknowledged, and as Shirley has taken great pains to argue, the state probate court has sole jurisdiction to administer Dude's estate, which includes the authority to take possession, liquidate, divide, and/or retitle Dude's separate property, as well as the responsibility to oversee the payment of estate debts, expenses, and other legal obligations. **Accordingly, by no later than Friday, April 8, 2022, Shirley must deliver Dude's separate assets (Doc. 203, Table 1, pp. 50–51), to Ray Fulmer, in his capacity as the Administrator of Dude's estate, for further disposition.**[8] To the extent grounds exist to question how or when these assets, or fractional interests within assets, should be administered in probate, the parties must seek relief from the state probate court.

---

[8] Shirley argues the Court lacks authority to impose a constructive trust over the personal property and household effects Dude owned at the time of his death because such property was not adequately identified by Plaintiffs. See Doc. 242, p. 25. The parties agreed prior to trial that the Court's task in this case was to determine Plaintiffs' equitable interest in Dude's separate and jointly held property. The parties also stipulated prior to trial that Dude owned certain, unspecified "personal property and household effects" during his lifetime, and that such property was in Shirley's custody and control. See Doc. 165, p. 9, ¶ 22(b). The parties further agreed that Dude's personal property and household effects would be inventoried by the Administrator in the normal course of probate proceedings after the Court determined Plaintiffs' equitable share. Shirley cannot swap horses post judgment; she must live with the position she took at time the factual issues were tried and submitted to the bench.

### 2. Dude's Jointly Held Property

As for the second category of assets that are not subject to probate, (Doc. 203, Tables 2–5, pp. 52–59), the Court will now consider whether to stay the execution of the Judgment pending the outcome of the appeal.

#### a. Likelihood of Success on the Merits

Shirley contends that a stay pending appeal is appropriate because the appeal will raise serious and close legal questions, and she is likely to prevail. The Court disagrees. The issues in this breach of contract case were factually complex but legally straightforward, and the Court finds there can be no reasonable dispute that Dude breached the contract. As for the remedy, a constructive trust was the only possible way to achieve specific performance of the contract's provisions, given the unique factual circumstances.

After a bench trial, the Court's factual and equitable findings are entitled to considerable deference. *See Hayes v. Metro. Prop. & Cas. Ins. Co.*, 908 F.3d 370, 374 (8th Cir. 2018) ("We review the district court's findings of fact in the bench trial for clear error and its legal conclusions de novo, overturning the factual findings only if they are not supported by substantial evidence, based upon an erroneous view of the law, or we are left with the definite and firm conviction that an error has been made."); *Kuehl v. Sellner*, 887 F.3d 845, 854 (8th Cir. 2018) ("We review the district court's grant of equitable relief for abuse of discretion . . . ."). Therefore, the first factor does not favor a stay.

### b. Balancing the Equities

Shirley argues it will be nearly impossible to undo the complex monetary transactions ordered in the Judgment if the Court of Appeals reverses—and she is right. There is a strong likelihood Shirley will suffer irreparable harm if the Eighth Circuit reverses after she sells the real property included in the Judgment (including her primary residence and vacation home) and transfers the publicly traded securities to Plaintiffs. The Eighth Circuit instructs that "economic loss does not, in and of itself, constitute irreparable harm," but "[t]he threat of *unrecoverable* economic loss, however, does qualify as irreparable harm." *Iowa Util. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996) (quotation marks and citation omitted and emphasis added).

Given the vast number of documents in the record and the financial complexity of the assets identified in the Findings of Fact and Conclusions of Law, it is likely this appeal could take one or two years to resolve. If the Eighth Circuit disagrees with the Court's order in any respect, it will be next-to-impossible to turn back time and place the parties in the positions they are in now, particularly with respect to the real estate and publicly traded securities.

On the flip-side, a stay will not substantially injure Plaintiffs, provided that the status quo is maintained. This can be accomplished by requiring Shirley to post a supersedeas bond, with special conditions, in an amount equal to the cash, proceeds, dividends, and Plaintiffs' interest in the real estate and closely-held companies, that the Court impressed with the constructive trust, plus post-judgment interest. Although Plaintiffs would prefer that a stay not be granted, the parties agree with the component

parts and line-item values to be bonded. Plaintiffs remaining concerns can be substantially ameliorated by the special conditions noted below.

To the extent the public's interest lies in the having the assets at issue distributed to the rightful owner or owners, a stay is favored. Moreover, if the Court's decision is reversed in any respect, the daunting task of identifying, tracing, and valuing the assets after they have been disbursed to the four Plaintiffs' separate accounts would certainly tax this Court's finite judicial resources.

At bottom, the Court agrees with Shirley's identification and valuation of the constructive trust assets and proceeds that are most appropriately bonded pending appeal.[9] The Court also agrees with Shirley's proposal to "freeze" the account holding the constructive trust portion of the publicly traded securities. The Court will therefore approve a Supersedeas Bond in the total sum of $18,800,000.00, inclusive of post-judgment interest at a rate of 0.48% per year for a two-year period. *See* 28 U.S.C.A. § 1961(b). **By no later than the close of business on Wednesday, April 6, 2022, Shirley is directed to submit a proposed *form* of Supersedeas Bond in the sum of $18,800,000.00, including the identity of the proposed corporate surety.**

Additionally, the Court will require that Shirley evidence her agreement to comply with certain special conditions while the appeal is pending. With regard to real and

---

[9] In her reply brief (Doc. 223) and supplement thereto (Doc. 226), Shirley identifies and values the jointly held assets and proceeds that are proposed to be bonded on appeal. At Plaintiffs' request, Shirley has acknowledged and accounts for certain valuation errors. See Doc. 223, p. 19. The parties are therefore in agreement that the principal value of the assets and proceeds "Held for Plaintiffs" in the constructive trust totals $18,620,408.76. (Doc. 226, p. 1). The parties also agree that $178,755.92 is an appropriate estimate of post-judgment interest to be secured by the bond. The total value of assets, proceeds, and interest to be bonded is $18,799,164.68, which the Court rounds to the even sum of $18,800,000.00.

personal property, Shirley must agree in writing, either within the form of the Supersedeas Bond or as a separate addendum, to the following conditions:

1. To not encumber the real property;
2. If requested, to provide Ray Fulmer, in his capacity as the Administrator of Dude's probate estate, and/or his designated representatives, with reasonable access to inspect and inventory the personal property and household effects impressed by the constructive trust for Plaintiffs' benefit;
3. To provide Plaintiffs (and/or a designated representative(s)) unrestricted access to inspect the Ranch and the Warehouse[10] on a semi-annual basis;
4. Provide Plaintiffs a quarterly accounting of the income produced by the Ranch and the Warehouse, to include a report of all gross income received and expenses paid, with lease and other supporting documentation upon request; and
5. Place the Plaintiffs' share of net real estate income into a separate escrow account.[11]

As for the publicly traded securities subject to the constructive trust,[12] the Court agrees with Shirley that the most conservative way to preserve these assets on appeal is to maintain them in their current management account. Shirley represents that she

---

[10] The Ranch refers to the leased residence at 3655 Beach Way in Van Buren, and the Warehouse refers to the commercial property on State Line Road in Fort Smith.

[11] A constructive trust was imposed for Plaintiffs' benefit on a collective 25% interest in the Ranch and a collective 50% interest in the Warehouse. (Doc. 203, Table 2, pp. 52–53). Net income in these same percentages must be deposited into a separate escrow account and held for Plaintiffs' benefit pending appeal.

[12] The specific securities and corresponding quantity of shares impressed by the constructive trust are identified in the Court's Findings of Fact and Conclusions of Law. (Doc. 203, Table 5, pp. 56–58).

will transfer out of the account only those positions that are not subject to the constructive trust and leave behind all positions subject to the trust. She further represents that the account will "not be charged any commissions or management fees while frozen." (Doc. 223, p. 15) (emphasis in original). Shirley must restate and agree to abide by these representations within the form of the Supersedeas Bond or in a separate addendum. Additionally, Shirley must represent and personally guarantee that, if any commissions or management fees are charged on the frozen account during the pendency of the appeal, Shirley will be solely responsible for paying them. Finally, Shirley must timely provide (or direct that the account manager provides) Plaintiffs (or their designated representative) a copy of each monthly statement on the frozen account during the pendency of the appeal.

Once the form of the Bond is approved by the Court, Shirley will have ten (10) calendar days to file the fully executed version, at which point the Court will enter a formal stay of execution. Until then, the Court's interim stay remains in effect (Doc. 229).

### III. CONCLUSION

**IT IS ORDERED** that Shirley's Motion to Alter Judgment (Docs. 231 & 242) is **DENIED**.

**IT IS FURTHER ORDERED** that Shirley's Motion to Stay Judgment Pending Post-Judgment Motion and Appeal (Doc. 218) is **GRANTED IN PART AND DENIED IN PART** as follows:

(1) The Motion is **DENIED** as to the separate assets subject to probate. By no later than Friday, April 8, 2022, Shirley must deliver Dude's separate assets (Doc. 203, Table 1, pp. 50–51), to Ray Fulmer, in his capacity as the Administrator of Dude's

estate, for further disposition. To the extent grounds exist to question how or when these assets, or fractional interests within assets, should be administered in probate, the parties must seek relief from the state probate court.

(2) The Motion is **GRANTED** as to the constructive trust portion of Dude's jointly held assets that are not subject to probate. *See* Doc. 203, pp. 52–59. By no later than the close of business on Wednesday, April 6, 2022, Shirley is directed to submit a proposed *form* of Supersedeas Bond in the sum of $18,800,000.00, including the identity of the proposed corporate surety. She must also agree in writing, either within the form of the Supersedeas Bond or as a separate addendum, to the conditions set forth above with respect to the real property and publicly traded securities subject to the constructive trust. Upon the filing of the court-approved and fully executed supersedeas bond, the Court will order that the execution of the Judgment be stayed as to these assets while the matter is on appeal with the Eighth Circuit.

**IT IS SO ORDERED** on this 31st day of March, 2022.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE