IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LISA CRAIN; CATHEE CRAIN;
MARILLYN CRAIN BRODY; and
KRISTAN SNELL                                                                                       PLAINTIFFS

V.                              CASE NO. 2:20-CV-2038

SHIRLEY CRAIN and RAY FULMER,
as Representative of the Estate
of H.C. "Dude" Crain, Jr., Deceased                                                     DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiffs filed a Motion for Attorneys' Fees and Costs Against the Estate of H.C. Crain, Jr. (Doc. 208). The Estate, which would be responsible for paying any reasonable fees and costs this Court may order, filed a Response (Doc. 225) *in support* of the Motion. Separate Defendant Shirley Crain, who is a beneficiary of the Estate, filed a Response (Doc. 224) in opposition to the Motion, and Plaintiffs filed a Reply (Doc. 235) to Shirley's Response. For the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

I. BACKGROUND

Plaintiffs, who are four sisters, filed this lawsuit on March 27, 2020, nearly three years after the death of their father, H.C. "Dude" Crain, Jr. They alleged in the lawsuit that they were the beneficiaries of a contract their father, Dude, entered into with their mother, Marillyn, when they divorced. Plaintiffs acknowledged they were aware of the existence of this contract—and their third-party beneficiary rights—since 1989, when their parents' divorce became final. The contract at issue was Dude and Marillyn's

1

property settlement agreement, which required them to engage in estate planning and bequeath at least half their respective estates to their daughters.

Just months after Dude and Marillyn divorced, Dude married his second wife, Shirley. Marillyn died in 2006 and left all her assets to Plaintiffs. Dude, however, did not pass away until 2017, and although he prepared a will before his death, Shirley did not submit that will to probate, nor did she distribute any of Dude's significant assets to the Plaintiffs. Shirley maintains she had no idea that her husband had entered a contract with Marillyn to make a will. Because Shirley was apparently ignorant of Dude's contractual obligations, she assumed Dude's assets became hers when he died.[1] She proceeded to dispose of those assets as she saw fit for the next three years—until Plaintiffs petitioned to admit the will to probate in state court, and then collaterally sued Dude's Probate Estate in this Court for breach of contract. Shirley was named a Defendant in this action because she controlled all the assets that had once been Dude's at the time of his death. Plaintiffs claimed a 50% interest in those assets.

Attorney Dick Hatfield represented the Plaintiffs at the time the instant lawsuit was filed. Several months later, Plaintiffs hired another law firm to assist with the case, RMP, LLP. Four attorneys from RMP immediately entered their appearances on behalf of Plaintiffs: Tim Hutchinson, Seth Haines, Bo Renner, and Taylor Baltz. Several months later, another attorney from RMP, Lisa Geary, entered an appearance. Once the attorneys from RMP entered the fray, they took over the prosecution of the case, and Mr. Hatfield's involvement dropped off considerably.

---

[1] The facts ultimately revealed, at a bare minimum, that Shirley was aware of a 2012 will that left considerable assets to pass through probate. She also knew that Plaintiffs had a significant residual interest in those assets, yet Shirley took no action to probate the will or to establish the trusts necessary to preserve those residual interests.

All parties were in agreement that the Court would decide as a matter of law whether Dude breached the property settlement agreement. This did not mean, however, that the months leading up to summary judgment were uneventful. The parties engaged in complex, fact-intensive discovery punctuated with a number of disputes that required Court resolution. When the deadline to submit summary judgment motions finally arrived, both sides submitted voluminous briefing and hundreds of pages of exhibits. Then, on May 5, 2021, a little over a year after the lawsuit commenced, the Court held a day-long hearing on the parties' cross-motions for summary judgment. On May 24, 2021, the Court issued a memorandum opinion and order (Doc. 147) finding in favor of Plaintiffs. The Court determined that because Dude breached the contract to make a will, his Estate was liable to Plaintiffs for damages.

Most breach-of-contract cases would have ended with a finding of liability and a calculation of damages. However, this case was complicated by the fact that Plaintiffs filed suit against their father's Estate nearly three years after his death. Consequently, not only was specific performance of the contract impossible, but the task of identifying the assets subject to Dude's contractual obligation became exceedingly complex. In the years after Dude's death, Shirley had sold, donated, loaned, or invested the assets. Many of the publicly-traded assets had nearly doubled in value, and the parties hotly disputed who should enjoy the resulting gains. Shirley also argued she was equitably entitled to more than half the assets in dispute because she had been responsible for their investment and growth since Dude's death. She pointed out that she was married to Dude for nearly 30 years, and that fact should be considered when apportioning the property he owned and controlled at the time of his death.

The Court had little choice but to equitably impose a constructive trust on the disputed assets and to name Shirley as trustee. What followed next was a three-day bench trial to specifically identify and value the assets impressed by the constructive trust, which took place from July 19–21, 2021. Following post-trial briefing, the Court issued a lengthy memorandum opinion and order (Doc. 203) that itemized the assets subject to the constructive trust, valued those assets, and then apportioned each party's interest.

Arkansas law permits Plaintiffs, as prevailing parties in a breach-of-contract action, to request a reasonable award of attorneys' fees from the breaching party—which, in this case, is Dude's Estate. *See* Ark. Code Ann. § 16-22-308 ("In any civil action to recover on [a] . . . breach of contract . . . the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs.").[2] Whether and how much to award in attorney's fees are left to the trial court's discretion. *TCBY Sys., Inc. v. RSP Co.,* 33 F.3d 925, 930 (8th Cir.1994); *First United Bank v. Phase II*, 347 Ark. 879, 901 (2002). Shirley does not dispute that Plaintiffs are the "prevailing part[ies]" as defined by the statute. Moreover, the Arkansas Supreme Court

---

[2] In the alternative, Plaintiffs argue that the property settlement agreement itself contemplates the payment of their attorneys' fees and costs for prevailing in this lawsuit. The Court disagrees. The property settlement agreement states that when "[a]ny wrongful and groundless refusal *by one party* to comply with the provisions of this agreement" results in "legal expenses *by the other party*," then "the party wrongfully refusing compliance [shall be] responsible for costs, damages[,] and legal expenses." (Doc. 38-2, p. 7, ¶ 9) (emphasis added). If Marillyn or her estate had sued Dude or his estate for breaching the agreement, then perhaps this particular provision might have covered Marillyn's legal expenses in bringing suit. But that is not what happened here. Plaintiffs are only third-party beneficiaries to the agreement—not parties—and, as such, they are not entitled to recoup their legal expenses under this provision of the agreement.

confirms that "third-party beneficiaries [of a contract] are entitled to recover attorney's fees under Ark. Code Ann. § 16–22–308." *Stilley v. James*, 347 Ark. 74, 80 (2001).

Shirley contends the Court should decline to award fees to Plaintiffs under § 16-22-308 because such an award "would result in financial penalty" to her, "since she is the owner of at least half of all the Estate assets." (Doc. 224, p. 5). Shirley reminds the Court that she was innocent of her husband's wrongdoing and, in an equitable sense, should "not be further held accountable for a breach of contract she did not, and could not, commit." *Id.* In response, the Court observes that Plaintiffs were just as "innocent" of their father's breach as Shirley, and Plaintiffs, like Shirley, are now the owners of at least half of the Estate's assets. It cannot reasonably be disputed that Plaintiffs prevailed in this lawsuit, and, therefore, the Arkansas statute providing for the payment of their fees should reimburse them—to a point—for having to resort to litigation to vindicate their rights.

In its discretion, the Court finds that Plaintiffs are entitled to the reasonable attorneys' fees they expended in securing the judgment of liability against their father's Estate. However, the fees they incurred *after* that point—in proving up the assets subject to the constructive trust—cannot be as easily justified. The Court is persuaded that the remedy phase of the lawsuit was complex, time-consuming, and costly *primarily because* Plaintiffs delayed three years in filing suit. They delayed even though they were fully aware of their contractual rights for decades before their father passed away. They delayed even though they must have known within a few months of Dude's death that Shirley was not opening a probate estate nor transferring millions of dollars' worth of assets to them. Meanwhile, Shirley, apparently oblivious to Plaintiffs' contractual

5

rights, believed for nearly three years after Dude's death that all his assets were hers to do with what she pleased. For example, she made certain decisions over the years with regard to publicly traded stock Dude owned prior to his death. The stock often changed in nature and character with the passage of time, and Shirley oversaw the management, sale, and sometimes reinvestment of those volatile assets while Plaintiffs essentially sat on their rights.

This is not to say that Plaintiffs filed their lawsuit out of time. They filed prior to the expiration of the statute of limitations, and they are certainly entitled to the full measure of their remedy for the breach. However, the equitable remedy phase of this particular breach-of-contract case is a distinctly unique matter in terms of a discretionary award of attorneys' fees. Such an award must be reasonable in the first instance, and in the Court's view, it would be unreasonable to award Plaintiffs the fees they incurred after the finding of liability on summary judgment. Therefore, the Court will only consider the reimbursement of attorneys' fees incurred prior to May 24, 2021.

## II.  LEGAL STANDARD

In considering whether the fees demanded by Plaintiffs' counsel are reasonable, the Court considered the following factors set forth by the Arkansas Supreme Court in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229–30 (1990), and cited to with approval by the Eighth Circuit, *see All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 521 (8th Cir. 2009): the amount of time counsel invested in the lawsuit; the appropriateness of counsel's rates, given the experience and ability of the attorneys; the time and labor required to perform the legal services properly; the amount potentially at issue in the

case; the results obtained; the novelty and difficulty of the issues involved; and the prevailing rate customarily charged in this area for similar legal services.

"While courts should be guided by [these] factors, there is no fixed formula in determining the reasonableness of an award of attorney's fees." *Phelps v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442 (2000). "[W]hen the trial judge is familiar with the case and the service done by the attorneys, the fixing of a fee is within the discretion of the court." *Hartford Accident & Indem. Co. v. Stewart Bros. Hardware Co.*, 285 Ark. 352, 354 (1985); *see also Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 534 (8th Cir. 2000).

In diversity cases, an award of taxable costs to prevailing parties is governed by Rule 54(d) of the Federal Rules of Civil Procedure; however, Rule 54(d) does not give a court the discretion to tax whatever costs it deems appropriate. Taxable costs are set forth in detail at 28 U.S.C. § 1920 and include fees of the clerk and court reporter, fees for printed and electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of any materials necessarily obtained for use in the case, docket fees, and compensation of court-appointed experts and interpreters. *Id.* The fees charged to parties by privately retained expert witnesses are not compensable under § 1920. *See Orduno v. Pietrzak*, 932 F.3d 710, 720 (8th Cir. 2019) (finding that § 1920 does not explicitly authorize the taxation of expert witness fees as costs and approving the district court's decision to decline to award such costs).

## III. DISCUSSION

## A.  ATTORNEYS' FEES

Plaintiffs' bills are divided into certain billing periods.  The June 8, 2021 bill from RMP is the last one containing time entries for work performed prior to the entry of the Court's order on summary judgment.  See Doc. 208-1, pp. 76–81.  Attorney Dick Hatfield also submitted bills for work he and his paralegal performed; however, his bills only run through April 18, 2020—which is nearly a year prior to the Court's order on summary judgment.  See Doc. 208-2.

The Court has analyzed the time records submitted for attorney work performed through May 24, 2021, the date of summary judgment, and finds generally that the number of hours Plaintiffs' counsel of record invested in the lawsuit up until that date is reasonable and should be reimbursed.  There are a few notable exceptions, however.

Six experienced attorneys entered their appearances on Plaintiffs' behalf, which is far more than a reasonable number of attorneys necessary to work on the average case.  But there is nothing average about this case.  Considering the vast sums at issue here and the complexity of the facts, the Court finds that heavily staffing the case with six attorneys was both necessary and appropriate.  Each member of the litigation team provided unique and valuable legal services to the Plaintiffs.  These attorneys are Dick Hatfield, Tim Hutchinson, Lisa Geary, Bo Renner, Seth Haines, and Taylor Baltz.

Next, it appears at least *six other attorneys* from RMP billed time to the case during the relevant time period, though these attorneys never entered their appearances, signed briefs, or attended court proceedings.  Plaintiffs fail to explain why

8

a team of twelve attorneys was necessary to handle the work in this case.³ In the absence of justification for staffing the case so heavily, the Court finds it unreasonable to reimburse Plaintiffs for the time spent by the following non-record attorneys: Lee Moore, Larry McCredy, Kasper Huber, Alex Miller, Anna Broadaway, and Trae Norton.

The Court is very familiar with the record, and it has considered: the skill and experience of the attorneys of record; the quality of legal services rendered; and the prevailing hourly rates charged by Arkansas attorneys of comparable skill and experience in matters of complex civil litigation. The Court approves the rates that all six attorneys of record charged, as follows: Dick Hatfield, $350 per hour; Tim Hutchinson, $310 per hour; Lisa Geary, $250 per hour; Bo Renner, $225 per hour; Seth Haines, $310 per hour; and Taylor Baltz, $160 per hour.⁴ The Court declines to award any fees for work performed by legal secretaries, legal assistants, law clerks, or law students.⁵ The Court approves a reasonable hourly rate of $60 per hour for time billed

---

³ The briefing appears to take for granted that all RMP bills should be reimbursed—regardless of who billed the time. For example, Seth Haines, an attorney of record, is never mentioned in the briefing, though his time entries appear in the bills. Luckily for Plaintiffs, the Court is familiar with Mr. Haines's education and experience from his work on other cases, so the omission of his resume is not terribly material. Other omissions are more concerning. For example, three non-record attorneys (Kasper Huber, Alex Miller, and Trae Norton) are not mentioned in the brief at all, though they billed time to the case. Three other non-record attorneys (Lee Moore, Larry McCredy, and Anna Broadaway) are mentioned in the brief to the extent that their one-paragraph biographies are included; however, these attorneys' contributions to this specific case are never fleshed out, particularly in relation to the contributions of the six record attorneys.

⁴ The bills identify the attorneys by the following initials: Hatfield (DH), Hutchinson (TCH), Geary (LMG), Renner (JRR), Haines (SMH), and Baltz (TDB).

⁵ In this case, the Court believes such expenditures should more reasonably be construed as part of the attorneys' office overhead.

9

by professional paralegals Crystal Crenshaw of RMP and Kristin Anderson of the Hatfield Firm.

The Court finds all hours billed by the attorneys of record and the paralegal from RMP—through summary judgment—were appropriate and reasonable. The following chart contains the approved totals:

| Biller | Number of Hours | Approved Rate | Total |
|---|---|---|---|
| Tim Hutchinson | 657.00 | $310 | $203,670.00 |
| Lisa Geary | 154.10 | $250 | $ 38,525.00 |
| Bo Renner | 37.75 | $225 | $   8,493.75 |
| Seth Haines | 9.25 | $310 | $   2,867.50 |
| Taylor Baltz | 469.25 | $160 | $ 75,080.00 |
| Crystal Crenshaw | 1.00 | $ 60 | $          60.00 |
| **GRAND TOTAL** | | | **$328,696.25** |

Mr. Hatfield and his paralegal provided descriptive billing statements for work performed between March 15, 2018, and April 18, 2020. *See* Doc. 208-2. The bills are, in a word, problematic. Most of Mr. Hatfield's time entries are partially or fully redacted, and he has reduced the hourly totals on various time entries by hand—without providing an explanation for how the reductions were calculated. For example, Mr. Hatfield's heavily redacted time entry from February 11, 2020 indicates that he spent 4.2 hours working on, among other things, a "revision of complaint, property settlement agreement and estate administration proceedings"; however, Mr. Hatfield handwrote the words "PS 2.0" just above the typewritten number "4.2." *Id.* at p. 21. The Court surmises these notations to mean that Mr. Hatfield intended to reduce the time billed from 4.2 hours to 2.0 hours. He did this in an effort to separate and prorate the time he spent working on the state probate matter from his work in preparing for and litigating the federal claim. In his affidavit, Mr. Hatfield explained that he went "through my billing records and

redacted the charges not related to this matter and then calculated the fees related to my representation in this matter." *Id.* at p. 1. Although not especially helpful to the Court's audit function here, the Court believes Mr. Hatfield's approach is honorable and in good faith. Nevertheless, the hand markings are not consistent in form and have led the Court to much head scratching.

Much more problematic, though, is the fact that Mr. Hatfield has not provided the Court with any monthly billing records after the statement dated April 21, 2020. He did submit a summary chart with monthly billing *totals* through January 11, 2022, *see id.* at p. 3, but mere totals are not sufficient for the Court's purposes in ruling on a contested fee motion.

The Court has independently reviewed each billing statement attached to Mr. Hatfield's affidavit and noted the number of hours credited on each page in accordance with his stated methodology. In other words, for each entry with an *un*redacted description of services provided, the Court has indicated its agreement with respect to the reasonable amount of time it should have taken to perform that work, in the Court's opinion and experience.[6] The following chart summarizes the reasonable fees earned by Mr. Hatfield and Ms. Anderson[7]:

| Biller | Number of Hours | Approved Rate | Total |
|---|---|---|---|
| Dick Hatfield | 95.30 | $350 | $33,355.00 |
| Kristin Anderson | 5.80 | $60 | $ 348.00 |
| **GRAND TOTAL** | | | **$33,703.00** |

---

[6] Exhibit 1 to this Order is the Court's annotated version of the billing records marked to reflect both page totals and billing statement totals for reasonable hours awarded.

[7] The Court has only awarded fees for substantive work documented with contemporaneous time records. Since no itemized bills were provided for work performed after April 18, 2020, no fees have been awarded for legal work performed beyond that date.

Combining the totals from the two charts above yields a combined award of fees of **$362,399.25**.  The litigation was hard-fought, and from the outset, the parties were aware that Dude's assets at the time of his death amounted to tens of millions of dollars.  Considering the high stakes, the relative novelty and complexity of the legal issues, the positive results obtained, and the time that Plaintiffs' attorneys were required to invest in the case—to the exclusion of other business—this award of fees is fair and reasonable in the Court's estimation.

### B.  COSTS

There are two types of costs:  taxable costs and nontaxable costs.  Taxable costs are referenced in Rule 54(d)(1) and are allowed to any prevailing party in a lawsuit.  Those sorts of costs are limited to those enumerated in 28 U.S.C. § 1920 and include fees charged by the clerk, fees for transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of materials necessarily obtained for use in the case, docket fees, and compensation of court-appointed experts and interpreters.

Nontaxable costs generally refer to a broader category of litigation-related expenses that would be normally charged to a client and that are not considered "taxable" under § 1920.  Rule 54(d)(2) "establishes a procedure for presenting claims for attorneys' fees, whether or not denominated as 'costs.'  It applies also to requests for reimbursement of expenses, not taxable as costs, when recoverable under *governing law incident to* the award of fees." Fed. R. Civ. P. 54(d)(2) Advisory Committee's Note to the 1993 Amendment (emphasis added). In a diversity case like this one, state law supplies the governing law for substantive issues, including attorney fees. *See Lamb*

*Engineering & Constr. v. Neb. Pub. Power Dist.*, 103 F.3d 1422, 1434 (8th Cir. 1997) (collecting cases); *see also GeoVera Specialty Ins. Co. v. Graham Rogers, Inc.*, 2010 WL 3327688, at *1 (E.D. Ark. Aug. 23, 2010). Therefore, Arkansas law governs whether nontaxable costs are recoverable in this case. *Vanderbilt Mortg. & Fin., Inc. v. Flores*, 2011 WL 2160928, at *7 (S.D. Tex. May 27, 2011) ("Thus, the movant's 'non-taxable expenses' are recoverable along with attorney's fees on a motion under Rule 54(d)(2), so long as they are recoverable under . . . state law.").

Here, Arkansas Code § 16-22-308 permits attorneys' fees to be awarded to Plaintiffs for prevailing on their breach-of-contract action. However, the Arkansas Supreme Court has narrowly construed the types of fees recoverable under state law to those specifically enumerated by a state statute. This result is partly reflected in Arkansas Rule of Civil Procedure 54(e), which governs awards of attorney fees and nontaxable expenses. That rule, just like its federal counterpart, requires the moving party to "specify the judgment and the statute or rule entitling the moving party to the award." Thus, Arkansas cases have rejected attempts to include any number of categories of ordinary and incidental expenses of litigation as either costs or as recoverable miscellaneous expenses. *See, e.g., Sunbelt Exploration Co. v. Stephens Production Co.*, 320 Ark. 298, 309 (1995) (finding that depositions, expert fees, and travel expenses are not permissible costs). While the word "costs" is a legal term of art, referring to a variety of specifically enumerated categories of recoverable expenditures rather than to any and all "expenses," Arkansas courts have made clear that miscellaneous litigation expenses, whether described as costs or as nontaxable expenses, may not be recovered absent statutory authority for doing so. *See, e.g., W.A.*

13

*Krueger Co. v. St. Bernard's Reg'l Med. Ctr.*, 267 Ark. 180, 181 (1979) (holding that certain miscellaneous expenses incidental to litigation were "not recoverable, as costs or otherwise, absent a statute so providing").

The Court therefore finds that only taxable costs, as categorized in § 1920, are properly reimbursable in this case through May 24, 2021. The lawyers associated with RMP are owed a total of $10,032.52 in costs, and Mr. Hatfield is owed $554.31 in costs. The grand total owed to Plaintiffs in taxable costs is therefore **$10,586.83**.

### IV.  CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs Against the Estate of H.C. Crain, Jr. (Doc. 208) is **GRANTED IN PART AND DENIED IN PART**, and the Estate of H.C. "Dude" Crain, Jr. is to pay Plaintiffs their reasonable attorneys' fees of **$362,399.25** and costs of **$10,586.83**, plus post-judgment interest accruing at the appropriate federal rate until fully paid.

**IT IS SO ORDERED** on this 15th day of July, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE